IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**HUNTER NICHOLS**,

                *Plaintiff*,

v.                                        Cause No. 3:21-CV-365-CWR-LGI

**GEORGIA BLUE, LLC**,

                *Defendant*.

## ORDER

Before the Court is the defendant's motion for summary judgment. Docket No. 26. On review, the motion will be granted in part and denied in part.

**I.  Factual and Procedural History**

Hunter Nichols worked as a Head Bartender at Georgia Blue, a restaurant in Madison, Mississippi. Two incidents during his employment are relevant to the present motion.

On the evening of October 2, 2020, Nichols served four patrons at a table in the bar area. When one of those patrons ordered two alcoholic drinks at the same time, Nichols believed that the patron was violating state law by giving their extra drink to an underage member of their party. Nichols confronted the party, confiscated the extra drink, and reported the issue to the manager on duty.

On October 21, 2020, General Manager Jason Burgardt met with Nichols to discuss Nichols' alleged poor performance. Burgardt demoted Nichols from Head Bartender to server. The parties' accounts of this meeting diverge, but most important is what happened

at the end. Nichols thought he was directed to stay home until he could be scheduled for a future server shift. Burgardt claims he directed Nichols to report the next day—October 22.

Nichols did not report to work on October 22. Accordingly, Burgardt says he fired Nichols as of that day. Nichols, however, continued to await instructions as to when he should return. And on October 23, a different supervisor texted Nichols asking if Nichols wanted to be placed back on the schedule as a server. Nichols was apparently non-committal.

That same day, October 23, 2020, Nichols filed a complaint with Human Resources via Georgia Blue's employee hotline. Nichols claimed that during their October 21 meeting, Burgardt had asked Nichols about the effect Nichols' facial hair had on his girlfriend during oral sex, and then used an obscene term for Nichols' mustache.

Georgia Blue referred Nichols' complaint to outside counsel, who called Nichols on October 25 to investigate. Counsel was unaware that Nichols had supposedly been terminated as of October 22. Counsel found that out one day later, on October 26.

Nichols says he realized he had been fired only in November 2020, when it had been weeks since he had been scheduled for any shift. He filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission. When that agency issued him a right to sue letter, Nichols filed this suit. In it, he asserted a Title VII retaliation claim and a wrongful termination claim under Mississippi law (a "*McArn*" claim). After discovery, Georgia Blue filed the present motion for summary judgment.

## II.    Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible

evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

### III.   Discussion

#### A.   Title VII Retaliation

"Title VII makes it unlawful for an employer to retaliate against an employee who opposes an employment practice that violates Title VII." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 489 (5th Cir. 2014) (citation omitted).

To establish a prima facie case of retaliation, "a plaintiff must show that (1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023) (citations and quotation marks omitted).

> If the plaintiff establishes a prima facie case, then the employer has the burden of production to provide a legitimate, non-discriminatory reason for the adverse employment action. If the employer meets this burden, then the plaintiff has the burden to prove that the proffered reason is pretextual. A plaintiff may establish pretext by showing that a discriminatory motive more

3

>likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence.

*Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (citations and quotation marks omitted).

Georgie Blue first contends that Nichols cannot meet step three of the prima facie case because he was fired a month *before* he engaged in protected activity—the filing of his EEOC Charge of Discrimination. The evidence, however, shows that Nichols also engaged in protected activity on October 23, 2020, when he complained to Human Resources that the General Manager made "inappropriate sexual comments about my genitals." Docket No. 1-1; *see also* Docket No. 29-1 at 2. Nichols' evidence further shows that he only realized he had been terminated weeks later, in November 2020, when he had not been scheduled for shifts. Docket No. 29-1 at 3. This relatively short period between protected activity and materially adverse action is a causal connection sufficient to meet Nichols' prima facie case. *See Brown*, 969 F.3d at 578 ("We have held that a period of two-and-a-half months, a period of two months, and a period of six-and-a-half weeks are close enough to show a causal connection.") (collecting cases).

At step two, Georgia Blue has satisfied its burden of production by alleging that Nichols was terminated for a legitimate, non-discriminatory reason: "job abandonment." Docket No. 25 at 10. As a result, the Court moves on to step three, pretext.

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence that

4

the employer did not act for the asserted non-discriminatory reasons." *Stennett v. Tupelo Pub. Sch. Dist.*, 619 F. App'x 310, 317 (5th Cir. 2015) (citation and quotation marks omitted).

In this case, Nichols has put forth evidence that a jury could rely upon to find Georgia Blue's reason for termination unworthy of credence. He has sworn, under oath, that General Manager Burgardt told him "that all my bartender shifts for the week would be covered and I would be contacted the following week with my schedule for working as a Server resulting in a loss of pay during that time. There was no confusion that I might work as a server that week. It was made clear by Mr. Burgardt that [I] would have no shift that week as part of my demotion and reprimand." Docket No. 29-1 at 2. If a jury believes this evidence, it would necessarily find Georgia Blue's explanation false; one cannot be held responsible for "job abandonment" when management directs you to not appear for work.

Georgia Blue has also given inconsistent explanations about the timing of Nichols' termination. It apparently told the EEOC that Nichols was fired on October 15—before the Nichols-Burgardt meeting. Docket No. 29-3. In this suit, however, Georgia Blue is certain that it fired Nichols on October 22 for failure to appear for work. Docket No. 25 at 11.

Here too, Nichols has presented evidence that this explanation is unworthy of credence. Despite a manager's sworn testimony that "my coworkers and I were unable to reach [Nichols] via phone or text to determine if he was going to come in for his shift" on October 22, Nichols has sworn that he never received any calls from Georgia Blue on October 22. *Compare* Docket No. 26-5 at 2 (manager's declaration) *with* Docket No. 29-1 at 3 (Nichols' affidavit). In addition, as Nichols observes, if he truly was fired on October 22, why did a supervisor text him on October 23 seeking to schedule him for future server shifts? The implication is that Georgia Blue's explanation is false and a pretext for retaliation.

5

In short, the Court finds "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action" that summary judgment on this claim must be denied, and the issue of Title VII retaliation be put before a jury. *See King v. Bd. of Trustees of State Inst. of Higher Learning of Miss.*, No. 3:11-CV-403-CWR-FKB, 2014 WL 1276477, at *9 (S.D. Miss. March 27, 2014).

### B.   Wrongful Termination Under Mississippi Law

The final issue is whether Georgia Blue is entitled to summary judgment on Nichols' *McArn* claim.

In *McArn v. Allied Bruce–Terminix Co.,* 626 So. 2d 603 (Miss. 1993), the Mississippi Supreme Court "carved out two exceptions to [its] employment-at-will doctrine." *DeCarlo v. Bonus Stores, Inc.*, 989 So. 2d 351, 355 (Miss. 2008) (en banc). They are, in relevant part: "(1) an employee who refuses to participate in an illegal act . . . shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer;" and "(2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer." *Id.* (citation and quotation marks omitted).

Georgia Blue argues that Nichols' claim fails because he cannot point to anything illegal that Georgia Blue did. Nichols responds that one of the patrons at the four-top that night was a Georgia Blue employee who, although technically off-duty, "was contributing to providing alcohol to a minor." Docket No. 30 at 8.

Georgia Blue has the better argument. Eagle-eyed Nichols is to be commended for catching the underage drinking, if any, but he has not pointed to any authority finding an

6

employer responsible under *McArn* for similar conduct by an off-duty employee. Nichols testified during his deposition that the manager actually on duty at Georgia Blue that evening acted responsibly in finding the alleged underage drinking "unacceptable." Docket No. 26-2 at 26. The Court does not see a factual dispute requiring a trial on this claim.

### IV. Conclusion

For these reasons, the motion for summary judgment is granted in part and denied in part. This case will be set for a status conference to discuss a new trial setting.

**SO ORDERED**, this the 29th day of March, 2023.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE